**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

CHERISH LEMIEUX,

        *Plaintiff,*　　　　　　　　　　　　　　**CASE NO.:**

v.

COMCAST CORPORATION,

        *Defendant.*

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Cherish Lemieux files this complaint against her former employer for violations of the Family Medical Leave Act of 1993 ("**FMLA**"), Title VII of the Civil Rights Act of 1964 ("**Title VII**"), the Americans with Disabilities Act of 1990 ("**ADA**"), and the Florida Civil Rights Act of 1992 ("**FCRA**") as follows:[1]

## PARTIES

1. Plaintiff is a woman who resides in Palm Beach County, Florida. She is a former Comcast employee. 29 U.S.C. § 2611(2)(A); 42 U.S.C. § 2000e(f). She was, at all relevant times, a qualified individual under the ADA. 42 U.S.C. § 12111(8).

2. Comcast is one of the largest media and technology companies in the world. As relevant here, it provides commercial and residential internet, television, and phone services. It is a Pennsylvania corporation that continuously conducts business within this district, has more than 500 employees, and was Plaintiff's employer at all times material. 29 U.S.C. § 2611(4)(A); 42 U.S.C. § 2000e(b); 42 U.S.C. § 12111(2); Fla. Stat. § 760.02(7).

---

[1] Plaintiff Cherish Lemieux is "**Ms. Lemieux**" or "**Plaintiff**." Defendant Comcast Corporation "**Comcast**" or "**Defendant**."

## JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

3.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 for claims arising under Title VII, the ADA,  and the FMLA.

4.      This Court has supplemental jurisdiction over Plaintiff's state law claims because they are so closely related to her federal claims that they form part of the same controversy. 28 U.S.C. § 1367.

5.      This Court has personal jurisdiction over Comcast because it continuously conducts business within this District.

6.      Venue is proper in this District, pursuant to 28 U.S.C. § 1391, because Defendant is subject to personal jurisdiction in this District and because the acts complained of giving rise to the claims herein occurred in this District.

7.      This matter directly involves a sexual harassment dispute. 9 U.S.C. § 401(4).

8.      Plaintiff has satisfied all conditions precedent to bringing this action. She timely filed her initial dual filed charge on August 27, 2024. She submitted an amended charge on March 3, 2025. She received no determination of rights from the Florida Commission on Human Rights and received her right to sue from the EEOC on March 9, 2026.

## GENERAL ALLEGATIONS

9.      Plaintiff joined Comcast in March 2021 as a Field Sales Representative. In that role, Plaintiff sold commercial internet services to commercial entities in South Florida. In addition to obtaining new customers for Defendant, she also worked to retain existing customers.

10.     Plaintiff consistently met or exceeded Defendant's performance expectations.

11.     Plaintiff was on FMLA leave from September 11, 2023, until January 22, 2024, for anxiety and depression.

12.     Upon returning from leave, Plaintiff's supervisor informed her that she would no longer be serving the territories that she served prior to going out on leave.

### A. Plaintiff is sexually harassed at a Comcast work conference by a peer.

13.     On January 30, 2024, during a Comcast work conference, Plaintiff asked a senior account executive, Gregory Beaudry if he possessed a phone charger. He stated that he had one in his hotel room.

14.     She went to his room where, ostensibly, he had the charger.

15.     When he opened the door to his hotel room, Mr. Beaudry was completely naked. He ordered Plaintiff to enter his room and demanded to view and touch Plaintiff's breasts. Plaintiff dissociated and entered.

16.     Plaintiff left the room immediately thereafter. She was deeply concerned that if she reported what had happened, she would be blamed or not believed.

### B. Plaintiff reports her sexual harassment and Defendant immediately discriminates and retaliates against her.

17.     Nonetheless, she reported Mr. Beaudry's conduct to Senior HR Manager Heather Eichenberg ("**Sr. HR Mgr. Eichenberg**") on March 5, 2024.

18.     As Plaintiff had feared, Sr. HR Mgr. Eichenberg blamed Plaintiff for Mr. Beaudry's behavior.

19.     During a March 15, 2024 meeting regarding Plaintiff's allegations, Sr. HR Mgr. Eichenberg and Director Christopher Williams ("**Dir. Williams**") issued Plaintiff an unwarranted write-up in connection with her reporting of the sexual harassment and locked her out of Defendant's systems.

20.     Sr. HR Mgr. Eichenberg shamed Plaintiff for "not reporting sooner" and Dir. Williams intentionally omitted Plaintiff's March 22, 2024 response to the action plan. Therein,

3

Plaintiff specifically addressed Mr. Beaudry's false statements and countered his version of events surrounding the sexually aggressive and harassing encounter.

21.     Despite this, Defendant took Mr. Beaudry's version of events at face value.

22.     Plaintiff was further chastised by Defendant's lead investigator on the matter, Danyelle Kirby ("**Inv. Kirby**").

23.     Inv. Kirby did this despite conceding to Plaintiff that Mr. Beaudry's sexually harassing conduct was inappropriate.

24.     Mr. Beaudry was never reprimanded for his conduct.

25.     At the time of the incident, Mr. Beaudry was still on his 90-day probationary period with Defendant whereas Plaintiff was a tenured, successful Senior Account Executive.

26.     Defendant required Plaintiff to continue working alongside Mr. Beaudry.

### C. *Defendant continues to side with Mr. Beaudry and fundamentally altered the terms of her employment.*

27.     In late March/early April 2024, Defendant split its West Palm Beach territory between Plaintiff and Mr. Beaudry.

28.     Defendant provided Mr. Beaudry with the more valuable portion of the territory. His portion contained an overwhelming amount of its lucrative commercial accounts.

29.     As a result of the unmitigated sexual harassment, discrimination, and retaliation she faced, Plaintiff's underlying mental health disorders, including anxiety, depression, and post-traumatic stress disorder, increased in severity and she was required to take short-term disability leave from mid-April 2024 to July 22, 2024.

30.     Defendant was aware of the mental health bases for Plaintiff's leave.

31.     Defendant was also aware, or reasonably should have been,  that its conduct was likely to exacerbate Plaintiff's underlying disabilities.

4

32. During Plaintiff's leave, she was not paid the appropriate wage for a Field Sales representative. She learned that (unbeknownst to her) upon returning from FMLA leave, in approximately February 2024, Defendant had changed her compensation structure, dramatically reducing it (essentially by removing Plaintiff's ability to earn commission).

33. Plaintiff also learned that she had not been paid appropriately during her September 2023 - January 2024 FMLA leave. Specifically, Plaintiff spoke to two Sedgwick representatives who informed her that she should have been paid $63.66/hour while on leave. In reality, she was only paid $37/hour. Defendant did this by intentionally miscalculating and misapplying Plaintiff's Annual Benefits Base Rate (ABBR).

34. This appears to have been targeted at Plaintiff, as others (males) on leave were making $60/hour.

### D. Defendant continues to discriminate against Plaintiff after she returns from short-term disability.

35. When she returned from short-term leave, Plaintiff had a new manager, Brad Scannapieco ("**Mgr. Scannapieco**").

36. Mgr. Scannapieco told Plaintiff that she was not going to receive the territory she had prior to her short-term disability leave (which had already been pared down in January 2024 and again in March 2024).

37. As this was happening, Plaintiff's work devices frequently did not work. She was unable to access Defendant's databases. She made repeated attempts to correct these issues with management and Defendant's IT department. But the issues persisted. For example, from July 22, 2024 - October 2024, Plaintiff had virtually no access to any of the systems that her peers enjoyed for approximately 70 days. This made Plaintiff's job extraordinarily difficult compared to that of her peers.

38. Plaintiff depended on commissions to make a living. Defendant dramatically reduced her ability to make commissions by refusing to allow her access comparable to her peers while simultaneously raising her commission targets.

39. Defendant weaponized its Compliance Department to target Plaintiff and push her out the door.

40. For example: On repeated occasions, Defendant deleted information that Plaintiff had placed into Defendant's various systems (such as Defendant's billing system, Cafe). Plaintiff also noticed that problematic customers who did not belong to her were placed into her file by an unknown person.

41. Defendant's Compliance Department initiated repeated investigations and compliance inquiries directed solely at Plaintiff.

42. Plaintiff reported the targeted scrutiny she faced to Valerie Knowles, Defendant's Compliance Investigator, and Barry Levin. As with her complaints about sexual harassment that precipitated Defendant attempting to push Plaintiff out of her employment, nothing was done to address the situation or help Plaintiff.

**E. Plaintiff is discriminatorily placed on an aggressive performance improvement plan.**

43. Defendant's discipline program works in two stages: Plan 1 and Plan 2

44. Plan 1 contains two potential extensions (i.e., prior to advancing to Plan 2).

45. Defendant grants a second extension ("**Plan 1- Extension 2**") on a case-by-case basis and the decision to leave an employee at Plan 1- Extension 2 or elevate them to Plan 2 is intentionally left to the discretion of management and HR. Grounds for granting or denying an employee's placement on Plan 1- Extension 2 are intentionally not put in writing. This practice ensures and allows, as it did here, Defendant may apply different standards to different employees.

6

46.     On September 11, 2024, Plaintiff reported to Sr. HR Mgr. Eichenberg that Mgr. Scannapieco would not permit her to return to her pre-short-term-disability-leave territory.

47.     Plaintiff was placed on Plan 1 on November 22, 2024 - which was extended to Plan 1 - Extension 1 in December 2024.

48.     In late January 2025, Plaintiff was elevated to Plan 2 rather than Plan 1 - Extension 2. Defendant claimed that this was because she missed her 80% "rolling average" revenue target. At the time, she was at 79.4% of the "rolling average" and the top performing representative in the region.

49.     Plaintiff, as any reasonable person in her position, realized that she was being pushed out the door and was going to be terminated. She feared that this would negatively impact her ability to gain future employment. She had repeatedly gone through all channels that she could to address the treatment that she was facing.

50.     The writing was on the wall. Plaintiff tendered her resignation. Her final day of employment was March 10, 2025.

## COUNT 1
## <u>VIOLATION OF TITLE VII (GENDER DISCRIMINATION)</u>

51.     Plaintiff repeats and realleges Paragraphs 1 through 50 as if fully set forth herein.

52.     Plaintiff's gender is a protected class under Title VII.

53.     Defendant's discriminatory conduct – including, without limitation, the failure to adequately address Plaintiff's sexual harassment reporting, blaming Plaintiff for the sexual harassment she endured, and writing Plaintiff up for reporting sexual harassment (while simultaneously ignoring Plaintiff's account of events and failing to discipline her harasser) constitute discrimination on the basis of gender.

54.     Plaintiff reported the misconduct she endured to human resources and supervisors.

55. Defendant credited the account of a male employee (her harasser) over Plaintiff's.

56. Defendant blamed Plaintiff instead of disciplining her male harasser and required her to continue working with him

57. Defendant split sales territories for Plaintiff's position and provided the more lucrative area and accounts to her male harasser.

58. Defendant treated similarly situated male employees more favorably in terms of leave pay, territory assignments, access, discipline progression, and commission opportunities.

59. Defendant altered the compensation structure and earning potential of Plaintiff.

60. Plaintiff suffered adverse employment actions affecting her compensation, territory assignments, discipline, and access to sales systems after Plaintiff reported her concerns about sexual harassment.

61. But for Plaintiff's gender, Defendant would not have engaged in these adverse employment actions. By discriminating against Plaintiff on the basis of her gender, Defendant denied Plaintiff the same right to enjoy the benefits, privileges, terms, and conditions of her employment as required by Title VII.

62. Plaintiff was discriminated against by Defendant's agents with decision-making authority over Plaintiff's employment on the basis of her sex.

63. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights. Defendant's management and human resource agents directly countenanced or approved of the retaliation against Plaintiff, as evinced by, among other things, the failure of anyone to correct Plaintiff's documented complaints and treatment of Plaintiff as the malfeasor after being subjected to unwanted sexual advances. Defendant compounded its misconduct when it systematically began pushing Plaintiff out of her employment after she reported sexual

8

harassment. This includes, among other things, the failure to address concerns regarding her access to Defendant's databases and discriminatory implementation of a disciplinary plan against Plaintiff in a manner that males were not subjected to.

64. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities.

65. Accordingly, Plaintiff is entitled to backpay, front pay, and compensatory and punitive damages, to the fullest extent permitted by Title VII.

**COUNT 2**
**VIOLATION OF TITLE VII (RETALIATION-GENDER)**

66. Plaintiff repeats and realleges Paragraphs 1 through 50 as if fully set forth herein.

67. Plaintiff's gender is a protected class under Title VII.

68. Defendant's discriminatory conduct – including, without limitation, the failure to adequately address Plaintiff's sexual harassment reporting, blaming Plaintiff for the sexual harassment she endured, and writing Plaintiff up for reporting sexual harassment (while simultaneously ignoring Plaintiff's account of events and failing to discipline her harasser) constitute discrimination on the basis of gender.

69. Plaintiff reported the misconduct she endured to human resources and supervisors.

70. Plaintiff's complaints (and subsequent filings with the EEOC) constituted a protected activity.

71. After reporting Mr. Beaudry, Defendant ignored Plaintiff's version of events and instead opted to give credence to his (disputed) version of the encounter at the work event on January 30, 2024.

9

72. Among other things, Plaintiff was subjected to a patently improper write-up on March 15, 2024, locked out from Defendant's systems, required to continually engage with her harasser, subjected to lesser commission opportunities, and placed on an aggressive performance improvement plan (which occurred *after* Plaintiff filed her initial charge with the EEOC). All of this conduct was tied to her protected activity.

73. But for Plaintiff's engagement in protected activity premised upon her gender, Defendant would not have engaged in these adverse employment actions. By retaliating against Plaintiff, Defendant denied Plaintiff the same right to enjoy the benefits, privileges, terms, and conditions of her employment as required by Title VII.

74. For engaging in protected activity, Plaintiff was targeted by Defendant's agents with decision-making authority over Plaintiff's employment.

75. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights. Defendant's management and human resource agents directly countenanced or approved of the retaliation against Plaintiff, as evinced by, among other things, the failure of anyone to correct Plaintiff's documented complaints and treatment of Plaintiff as the malfeasor after being subjected to unwanted sexual advances. Defendant compounded its misconduct when it systematically began pushing Plaintiff out of her employment after she reported sexual harassment. This includes the failure to address concerns regarding her access to Defendant's databases and discriminatory implementation of a disciplinary plan against Plaintiff in a manner that males were not subjected to.

76. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities.

77.     Accordingly, Plaintiff is entitled to backpay, frontpay, and compensatory and punitive damages, to the fullest extent permitted by Title VII.

**COUNT 3**
**(TITLE VII - HOSTILE WORK ENVIRONMENT - GENDER)**

78.     Plaintiff repeats and realleges Paragraphs 1 through 50 as if fully set forth herein.

79.     Plaintiff's gender is a protected class under Title VII.

80.     Plaintiff's mistreatment occurred because she is a woman. But for that status, she would have been treated differently by Defendant after reporting sexual harassment.

81.     Defendant's managers belittled and humiliated Plaintiff for reporting misconduct.

82.     Defendant's conduct was exacerbated when Plaintiff's terms of employment were altered by Defendant's targeting of Plaintiff's ability to earn money (both through taking away valuable territories from her, forcing her to work alongside her harasser, and intentionally failing to correct computer issues) and placing her on a discriminatory employment plan.

83.     Plaintiff did not welcome Defendant's conduct (through not only her harasser, but management and human resources' treatment of her).

84.     A reasonable person would have found that the offensive acts and statements that were directed at Plaintiff materially altered the terms and conditions of her employment.

85.     Defendant knew, through its own upper management and human resources who engaged in the misconduct, about the work environment that Plaintiff was being subjected to.

86.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages, including emotional distress, humiliation, loss of dignity, loss of benefits, and other damages.

87.     Plaintiff did not welcome the offensive acts and statements of her harasser or her superiors. She repeatedly and clearly addressed and attempted to correct Defendant's baseless conclusions.

88.     Defendant took no meaningful action to correct or curb her harasser's conduct. Instead, it placed the blame squarely on Plaintiff. This was despite the fact that she was lured into a hotel room under false pretenses and exposed to behavior that is objectively inappropriate.

89.     Defendant had a duty to investigate, separate the employees, and discipline Mr. Beaudry. Instead (and despite the relevant facts available to it), Defendant turned on Plaintiff.

90.     Defendant's conduct was severe and pervasive to a degree that it materially altered the conditions of Plaintiff's employment.

91.     Defendant's actions were willful and done with intentional harm and reckless indifference to Plaintiff's rights, thus warranting an award of punitive damages in Plaintiff's favor. As such, Plaintiff is entitled to compensatory and punitive damages, to the fullest extent permitted by Title VII.

## COUNT 4
## VIOLATION OF FCRA (GENDER DISCRIMINATION - DISPARATE TREATMENT)

92.     Plaintiff repeats and realleges Paragraphs 1 through 50 as if fully set forth herein.

93.     Plaintiff's gender is a protected class under the FCRA.

94.     Defendant's discriminatory conduct – including, without limitation, the failure to adequately address Plaintiff's sexual harassment reporting, blaming Plaintiff for the sexual harassment she endured, and writing Plaintiff up for reporting sexual harassment (while simultaneously ignoring Plaintiff's account of events and failing to discipline her harasser) constitute discrimination on the basis of gender.

95.     Plaintiff reported the misconduct she endured to human resources and supervisors.

96.     Defendant credited the account of a male employee (her harasser) over Plaintiff's.

97.     Defendant blamed Plaintiff instead of disciplining her male harasser and required to her to continue working with him

12

98.     Defendant split territories previously worked by Plaintiff, providing the more lucrative portion to her harasser.

99.     Defendant treated similarly situated male employees more favorably in terms of leave pay, territory assignments, access, discipline progression, and commission opportunities.

100.    Defendant also altered the compensation structure and earning potential of Plaintiff.

101.    Defendant discriminated against Plaintiff by, among other things, targeting her compensation, territory assignments, and access to sales systems while also subjecting her to harsher disciplinary plans than her males.

102.    This occurred after Plaintiff reported her concerns about sexual harassment.

103.    But for Plaintiff's gender, Defendant would not have engaged in these adverse employment actions. By discriminating against Plaintiff on the basis of her gender, Defendant denied Plaintiff the same right to enjoy the benefits, privileges, terms, and conditions of her employment as required by the FCRA.

104.    The discrimination to which Plaintiff was subjected was made by Defendant's agents with decision-making authority over Plaintiff's employment.

105.    Defendant acted with malice or reckless indifference to Plaintiff's statutorily protected rights. Defendant's management and human resource agents directly countenanced or approved of the retaliation against Plaintiff, as evinced by, among other things, the failure of anyone to correct Plaintiff's documented complaints and treatment of Plaintiff as the malfeasor after being subjected to unwanted sexual advances. Defendant compounded its misconduct when it systematically began pushing Plaintiff out of her employment after she reported sexual harassment. This includes the failure to address concerns regarding her access to Defendant's

databases and discriminatory implementation of a disciplinary plan against Plaintiff in a manner that males were not subjected to.

106. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities.

107. Accordingly, Plaintiff is entitled to backpay, front pay, and compensatory and punitive damages, to the fullest extent permitted by the FCRA.

## COUNT 5
## VIOLATION OF FCRA (RETALIATION-GENDER)

108. Plaintiff repeats and realleges Paragraphs 1 through 50 as if fully set forth herein.

109. Plaintiff's gender is a protected class under the FCRA.

110. Defendant's discriminatory and retaliatory conduct – including, without limitation, the failure to adequately address Plaintiff's sexual harassment reporting, blaming Plaintiff for the sexual harassment she endured, and writing Plaintiff up for reporting sexual harassment (while simultaneously ignoring Plaintiff's account of events and failing to discipline her harasser) constitute discrimination on the basis of gender.

111. Plaintiff reported the misconduct she endured to human resources and supervisors.

112. Plaintiff's complaints (and subsequent filings with the EEOC and FCHR) constituted protected activity.

113. After reporting Mr. Beaudry, Defendant ignored Plaintiff's version of events and instead opted to give credence to his (disputed) version of the encounter at the work event on January 30, 2024.

114. Among other things, Plaintiff was subjected to and patently improper writeup on March 15, 2024, locked out from Defendant's systems, required to continually engage with her

14

harasser, subjected to lesser commission opportunities, and placed on an aggressive performance improvement plan (which occurred after Plaintiff filed her initial charge with the EEOC and FCHR).

115.    But for Plaintiff's protected activity premised on her gender, Defendant would not have engaged in these adverse employment actions. By retaliating against Plaintiff on the basis of her gender, Defendant denied Plaintiff the same right to enjoy the benefits, privileges, terms, and conditions of her employment as required by the FCRA.

116.    For engaging in protected activity, Plaintiff was targeted by Defendant's agents with decision-making authority over Plaintiff's employment.

117.    Defendant acted with malice or reckless indifference to Plaintiff's statutorily protected rights. Defendant's management and human resource agents directly countenanced or approved of the retaliation against Plaintiff, as evinced by, among other things, the failure of anyone to correct Plaintiff's documented complaints and treatment of Plaintiff as the malfeasor after being subjected to unwanted sexual advances. Defendant compounded its misconduct when it systematically began pushing Plaintiff out of her employment after she reported sexual harassment. This includes the failure to address concerns regarding her access to Defendant's databases and discriminatory implementation of a disciplinary plan against Plaintiff in a manner that males were not subjected to.

118.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities.

119.    Accordingly, Plaintiff is entitled to backpay, frontpay, and compensatory and punitive damages, to the fullest extent permitted by the FCRA.

## COUNT 6
## (FCRA - HOSTILE WORK ENVIRONMENT - GENDER)

120.    Plaintiff repeats and realleges Paragraphs 1 through 50 as if fully set forth herein.

121.    Plaintiff's gender is a protected class under the FCRA.

122.    Plaintiff's mistreatment occurred because she is a woman. But for that status, she would have been treated differently by Defendant after reporting sexual harassment.

123.    Defendant's managers belittled and humiliated Plaintiff for reporting misconduct.

124.    Defendant's conduct was exacerbated when Plaintiff's terms of employment were altered by Defendant's targeting of Plaintiff's ability to earn money (both through taking away valuable territories from her, forcing her to work alongside her harasser, and intentionally failing to correct computer issues) and placing her on a discriminatory employment plan.

125.    Plaintiff did not welcome the offensive acts and statements of her harasser or her superiors.  She repeatedly and clearly addressed and attempted to correct Defendant's baseless conclusions.

126.    Defendant took no meaningful action to correct or curb her harasser's conduct. Instead, it placed the blame squarely on Plaintiff.

127.    Defendant had a duty to investigate, separate the employees, and discipline Mr. Beaudry. Instead (and despite the relevant facts available to it), Defendant turned on Plaintiff.

128.    Defendant's conduct was severe and pervasive to a degree that it materially altered the conditions of Plaintiff's employment.

129.    A reasonable person would have found that the offensive acts and statements that were directed at Plaintiff materially altered the terms and conditions of her employment.

130.    Defendant knew, through its own upper management who engaged in the misconduct, about the work environment that Plaintiff was being subjected to.

16

131. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages, including emotional distress, humiliation, loss of dignity, loss of benefits, and other damages.

132. Defendant's actions were willful and done with intentional harm and reckless indifference to Plaintiff's rights, thus warranting an award of punitive damages in Plaintiff's favor. As such, Plaintiff is entitled to compensatory and punitive damages, to the fullest extent permitted by the FCRA.

**COUNT 7**
**VIOLATION OF ADA (DISCRIMINATION - DISPARATE TREATMENT)**

133. Plaintiff repeats and realleges Paragraphs 1 through 50 as if fully set forth herein.

134. Plaintiff is a qualified individual with a disability.

135. Her chronic, recurrent mental disorders constituted a mental and/or physical impairment which actually (or as perceived by Defendant) substantially limited one or more major life activities.

136. Defendant was fully aware of Plaintiffs disabilities.

137. Plaintiff was discriminated against by Defendant, among other ways, due to Defendant's limitation, segregation, and classification of her and her compensation structure. Defendant's conduct adversely affected Plaintiff's opportunities and status due to her disabilities.

138. The discrimination was undertaken by high-ranking individuals such that Defendant's conduct constitutes official decisions of Defendant.

139. Multiple high-ranking agents of Defendant were aware of Defendant's discriminatory conduct and failed to take adequate steps to remedy the misconduct despite possessing the ability to do so.

140. Defendant acted with malice or reckless indifference to Plaintiff's rights. Further, Defendant's management knowingly countenanced or approved of the discrimination, as exhibited,

among other things,  by the failure to address    the mistreatment of Plaintiff following her return from FMLA leave and short-term disability.

141.     As a proximate and direct result of Defendant's conduct, Plaintiff suffered, and continues to suffer, damages, including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities in an amount to be determined at trial.

## COUNT 8
## VIOLATION OF ADA (RETALIATION)

142.     Plaintiff repeats and realleges Paragraphs 1 through 50 as if fully set forth herein.

143.     Plaintiff is a qualified individual with a disability.

144.     Her chronic, recurrent mental disorders constituted a mental and/or physical impairment which actually (or as perceived by Defendant) substantially limited one or more major life activities.

145.     Defendant was fully aware of Plaintiff's disabilities.

146.     Plaintiff engaged in protected activity when discussing her disability and corresponding needs with superiors in connection with leave and when reporting her perceived mistreatment in connection with same.

147.     Defendant took adverse employment actions when, among other things, it refused to allow Plaintiff to return to territories she had successfully worked, failed to adequately compensate her while she was on leaves, altered her pay compensation, and placed her on an aggressive performance improvement plan following her filing of an EEOC charge.

148.      Defendant's conduct constitutes unlawful retaliation that was undertaken by high-ranking individuals such that the unlawful retaliation constitutes official decisions of Defendant.

18

149. Multiple high-ranking agents of Defendant were aware of Defendant's retaliatory conduct and failed to take adequate steps to remedy the misconduct despite possessing the ability to do so.

150. Defendant acted with malice or reckless indifference to Plaintiff's rights. Further, Defendant's management knowingly countenanced or approved of the retaliation, as exhibited, among other things, by the failure to address the mistreatment of Plaintiff following her return from FMLA leave and short-term disability and placement of her on an aggressive (and improper) performance improvement plan.

151. As a proximate and direct result of Defendant's conduct, Plaintiff suffered, and continues to suffer, damages, including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities in an amount to be determined at trial.

## COUNT 9
## (ADA - HOSTILE WORK ENVIRONMENT)

152. Plaintiff repeats and realleges Paragraphs 1 through 50 as if fully set forth herein.

153. Plaintiff is a qualified individual with a disability.

154. Her chronic, recurrent mental disorders constituted a mental and/or physical impairment which actually (or as perceived by Defendant) substantially limited one or more major life activities.

155. Defendant was fully aware of Plaintiff's disabilities.

156. Defendant's managers belittled and humiliated Plaintiff for reporting misconduct, including that pertaining to the sexual harassment she was subjected to, which exacerbated her disabilities.

157. Defendant's conduct was exacerbated when Plaintiff's terms of employment were altered by Defendant's targeting of Plaintiff's ability to earn money (both through taking away

19

valuable territories from her, forcing her to work alongside her harasser, and intentionally failing to correct computer issues) and placing her on a discriminatory employment plan.

158. Plaintiff did not welcome Defendant's conduct (through not only her harasser, but management and human resources' treatment of her).

159. A reasonable person would have found that the offensive acts and statements that were directed at Plaintiff materially altered the terms and conditions of her employment.

160. Defendant knew, through its own upper management and human resources who engaged in the misconduct, about the work environment that Plaintiff was being subjected to.

161. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages, including emotional distress, humiliation, loss of dignity, loss of benefits, and other damages.

162. Plaintiff did not welcome the offensive acts and statements of her harasser or her superiors. She repeatedly and clearly addressed and attempted to correct Defendant's baseless conclusions.

163. Defendant took no meaningful action to correct or curb her harasser's conduct or the discriminatory conduct of her superiors.

164. Defendant's conduct was severe and pervasive to a degree that it materially altered the conditions of Plaintiff's employment.

165. Defendant's actions were willful and done with intentional harm and reckless indifference to Plaintiff's rights, thus warranting an award of punitive damages in Plaintiff's favor. As such, Plaintiff is entitled to compensatory and punitive damages, to the fullest extent permitted by the ADA

**COUNT 10**
**VIOLATION OF FCRA (DISABILITY DISCRIMINATION - DISPARATE TREATMENT)**

166.    Plaintiff repeats and realleges Paragraphs 1 through 50 as if fully set forth herein.

167.    Plaintiff is a qualified individual with a disability.

168.    Her chronic, recurrent mental disorders constituted a mental and/or physical impairment which actually (or as perceived by Defendant) substantially limited one or more major life activities.

169.    Defendant was fully aware of Plaintiff's disabilities.

170.    Plaintiff was discriminated against by Defendant, among other ways, due to Defendant's limitation, segregation, and classification of her and her compensation structure. Defendant's conduct adversely affected Plaintiff's opportunities and status due to her disabilities.

171.    The discrimination was undertaken by high-ranking individuals such that Defendant's conduct constitutes official decisions of Defendant.

172.    Multiple high-ranking agents of Defendant were aware of Defendant's discriminatory conduct and failed to take adequate steps to remedy the misconduct despite possessing the ability to do so.

173.    Defendant acted with malice or reckless indifference to Plaintiff's rights. Further, Defendant's management knowingly countenanced or approved of the discrimination, as exhibited, among other things,  by the failure to address the mistreatment of Plaintiff following her return from FMLA leave and short-term disability.

174.    As a proximate and direct result of Defendant's conduct, Plaintiff suffered, and continues to suffer, damages, including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities in an amount to be determined at trial.

21

## COUNT 11
## VIOLATION OF FCRA (RETALIATION - DISABILITY)

175. Plaintiff repeats and realleges Paragraphs 1 through 50 as if fully set forth herein.

176. Plaintiff is a qualified individual with a disability.

177. Her chronic, recurrent mental disorders constituted a mental and/or physical impairment which actually (or as perceived by Defendant) substantially limited one or more major life activities.

178. Defendant was fully aware of Plaintiff's disabilities.

179. Plaintiff engaged in protected activity when discussing her disability and corresponding needs with superiors in connection with leave and when reporting her perceived mistreatment in connection with same.

180. Defendant took adverse employment actions when, among other things, it refused to allow Plaintiff to return to territories she had successfully worked, failed to adequately compensate her while she was on leaves, altered her pay compensation, and placed her on an aggressive performance improvement plan following her filing of an FCHR charge.

181. Defendant's conduct constitutes unlawful retaliation that was undertaken by high-ranking individuals such that the unlawful retaliation constitutes official decisions of Defendant.

182. Multiple high-ranking agents of Defendant were aware of Defendant's retaliatory conduct and failed to take adequate steps to remedy the misconduct despite possessing the ability to do so.

183. Defendant acted with malice or reckless indifference to Plaintiff's rights. Further, Defendant's management knowingly countenanced or approved of the retaliation, as exhibited, among other things,  by the failure to address the mistreatment of Plaintiff following her return

22

from FMLA leave and short-term disability and placement of her on an aggressive (and improper) performance improvement plan.

184.    As a proximate and direct result of Defendant's conduct, Plaintiff suffered, and continues to suffer, damages, including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities in an amount to be determined at trial.

**COUNT 12**
**VIOLATION OF FCRA (HOSTILE WORK ENVIRONMENT-DISABILITY)**

185.    Plaintiff repeats and realleges Paragraphs 1 through 50 as if fully set forth herein.

186.    Plaintiff is a qualified individual with a disability.

187.    Her chronic, recurrent mental disorders constituted a mental and/or physical impairment which actually (or as perceived by Defendant) substantially limited one or more major life activities.

188.    Defendant was fully aware of Plaintiff's disabilities.

189.    Defendant's managers belittled and humiliated Plaintiff for reporting misconduct.

190.    Defendant's conduct was exacerbated when Plaintiff's terms of employment were altered by Defendant's targeting of Plaintiff's ability to earn money (both through taking away valuable territories from her, forcing her to work alongside her harasser, and intentionally failing to correct computer issues) and placing her on a discriminatory employment plan.

191.    Plaintiff did not welcome Defendant's conduct (through not only her harasser, but management and human resources' treatment of her).

192.    A reasonable person would have found that the offensive acts and statements that were directed at Plaintiff materially altered the terms and conditions of her employment.

193.    Defendant knew, through its own upper management and human resources who engaged in the misconduct, about the work environment that Plaintiff was being subjected to.

194.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages, including emotional distress, humiliation, loss of dignity, loss of benefits, and other damages.

195.    Plaintiff did not welcome the offensive acts and statements of her harasser or her superiors. She repeatedly attempted to set the story straight and address Defendant's baseless conclusions.

196.    Defendant took no meaningful action to correct or curb her harasser's conduct or the discriminatory conduct of her superiors.

197.    Defendant's conduct was severe and pervasive to a degree that it materially altered the conditions of Plaintiff's employment.

198.    Defendant's actions were willful and done with intentional harm and reckless indifference to Plaintiff's rights, thus warranting an award of punitive damages in Plaintiff's favor. As such, Plaintiff is entitled to compensatory and punitive damages, to the fullest extent permitted by the FCRA.

## COUNT 13
## CONSTRUCTIVE DISCHARGE IN VIOLATION OF TITLE VII, ADA, FCRA

199.    Plaintiff repeats and realleges Paragraphs 1 through 50 as if fully set forth herein.

200.    Plaintiff was subjected to objectively unreasonable and intolerable working conditions.

201.    Among other things: Plaintiff was belittled, demeaned, and written up for reporting sexual harassment. She was then forced to work alongside her harasser. She was routinely locked out of Defendant's systems. Her compensation structure was changed and her ability to otherwise earn money was limited. She was placed on inappropriate and improper performance improvement plans that guaranteed that she was going to be terminated.

24

202.    Defendant's conduct created working conditions so intolerable that a reasonable person would feel compelled to resign.

203.    As a direct result of Defendant's discrimination and retaliation against her, Plaintiff resigned.

**COUNT 14**
**VIOLATION OF FMLA (INTERFERENCE)**

204.    Plaintiff realleges and incorporates by reference paragraphs 1-50 as if fully set forth herein.

205.    Plaintiff worked for Defendant for more than 12 months prior to the date her leave was supposed to begin.

206.    Plaintiff worked more than 1,250 hours in the year leading up to the date her leave was supposed to begin.

207.    Plaintiff gave Defendant proper notice of her need for leave.

208.    Defendant recognized that Plaintiff's requested leave was an FMLA-qualifying reason.

209.    Defendant repeatedly expressed to Plaintiff that she was eligible and entitled to paid leave in accordance with its policies regarding same. Such conduct ratified Plaintiff's belief that she was eligible and entitled to the leave sought.

210.    Defendant interfered with Plaintiff's rights when it failed to adequately pay her while she was on leave and failed to apprise her that she would not be restored to the same or similar position that she had enjoyed prior to taking leave (both in terms of compensation and opportunities by way of territories available to her).

211.    Defendant also failed to restore Plaintiff to the same or equivalent position in terms of territory, commission opportunity, compensation structure, and access to tools necessary to perform her job.

212.    Defendant did not act in good faith with respect to Plaintiff's FMLA rights. Defendant's decision to interfere with Plaintiff's FMLA rights was willful and knowing.

213.    As a result of Defendant's conduct, Plaintiff is entitled to monetary damages in an amount to be determined at trial.

**COUNT 15**
**VIOLATION OF FMLA (RETALIATION)**

214.    Plaintiff realleges and incorporates by reference paragraphs 1-50 as if fully set forth herein.

215.    Plaintiff worked for Defendant for more than 12 months prior to the date her leave was supposed to begin.

216.    Plaintiff worked more than 1,250 hours in the year leading up to the date her leave was supposed to begin.

217.    Plaintiff gave Defendant proper notice of her need for leave.

218.    Plaintiff's assertion of her right to take leave constituted protected activity within the meaning of the FMLA.

219.    Defendant recognized that Plaintiff's requested leave was an FMLA-qualifying reason.

220.    Defendant approved the leave and represented that Plaintiff would receive compensation and benefits in accordance with its leave and benefits policies.

221.    Defendant then miscalculated and underpaid the compensation/benefits payable during the leave period.

26

222. Defendant also failed to restore Plaintiff to the same or equivalent position upon her return.

223. Defendant did not undertake this conduct in good faith. Defendant's retaliation for Plaintiff's approved FMLA leave was willful and knowing.

224. As a result of Defendant's conduct, Plaintiff is entitled to monetary damages in an amount to be determined at trial.

## **REQUEST FOR RELIEF**

Plaintiff respectfully requests the Court enter judgment in her favor and award:

a. All statutorily available damages pursuant to Title VII, to the fullest extent permitted by law (including backpay, frontpay, compensatory and punitive damage)

b. All statutorily available damages pursuant to the ADA, to the fullest extent permitted by law (including backpay, frontpay, compensatory, and punitive damages)

c. All statutorily available damages pursuant to the FCRA, to the fullest extent permitted by law (including backpay, frontpay, compensatory, and punitive damages)

d. All statutorily available damages pursuant to the FMLA, to the fullest extent permitted by law (including backpay, frontpay, and liquidated damages);

e. Pre-judgment and post-judgment interest;

f. An award of costs and reasonable attorneys' fees; and

g. Such other relief as this Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all claims.

Dated: March 14, 2026

Respectfully submitted,

By: */s/ Christopher S. Prater*
Christopher S. Prater
Florida Bar No.: 105488
cprater@pollardllc.com

Michael G. Green, III
Florida Bar No.: 60859
mgreen@pollardllc.com

Jonathan E. Pollard
Florida Bar No.: 83613
jpollard@pollardllc.com

**Pollard PLLC**
500 E Broward Blvd., Ste. 950
Fort Lauderdale, FL 33394
Telephone: 954-332-2380
Facsimile: 866-594-5731
*Attorneys for Plaintiff Cherish Lemieux*